WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carol Nielsen,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　　Defendant. | No. CV-20-08096-PCT-SMB<br><br>**ORDER** |

At issue is the denial of Plaintiff Carol Nielsen's Applications for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) seeking judicial review of that denial and an Opening Brief (Doc. 21). Defendant SSA filed an Answering Brief (Doc. 25), and Plaintiff filed a Reply (Doc. 27). The Court has reviewed the briefs and Administrative Record ("AR") (Doc. 20), and it affirms the Administrative Law Judge's ("ALJ") decision (AR at 15-29) for the reasons addressed herein.

**I.     Background**

Plaintiff filed Applications for SSDI and SSI benefits on January 22, 2013, alleging an onset of disability date of January 15, 2009. (Doc. 21 at 6). After initial administrative denials, a hearing was held and a decision was entered finding Plaintiff not disabled. The Appeals Council remanded the decision back to the ALJ for a new hearing. A subsequent hearing was held before ALJ Patricia A. Bucci on July 5, 2018. (*Id.* at 62-

81). Plaintiff held relevant previous employment as a nurse and as a telephone maintenance mechanic. (*Id.* at 43-46, 55) Plaintiff's Applications were denied a second time in a decision by the ALJ on November 8, 2018. (*Id.* at 29). Thereafter, the Appeals Council denied Plaintiff's Request for Review of the ALJ's decision and this appeal followed. (Doc. 1).

After considering the medical evidence and opinions, the ALJ evaluated Plaintiff's disability claim based on the severe impairments of lumbar spine degenerative disc disease post-surgery, obesity, cervical degenerative disc disease status post-fusion, and bilateral carpal tunnel syndrome status post right release. (AR 18). While the ALJ noted that Plaintiff's severe impairments limited her ability to perform basic work activities, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a range of light work, with a number of additional limitations, and thus was not disabled. (*Id.* at 20).

Plaintiff raises five issues on appeal: whether the ALJ adequately explained her step three decision, whether the ALJ adequately resolved conflicts between the VE testimony and the RFC, whether the ALJ erred in failing to give clear and convincing reasons to discount her subjective symptom testimony, whether the ALJ properly considered the medical evidence of record, and whether the ALJ failed to comply with the Appeals Council's remand order related to the evaluation of Plaintiff's obesity. (Doc. 21). Plaintiff requests this matter be remanded for an award of benefits. (*Id.*) The Commissioner argues that the ALJ's opinion is free of harmful error and must be affirmed. (Doc. 25). The Court has reviewed the medical record and will discuss the pertinent evidence in addressing the issues raised by the parties.

## II.     Legal Standards

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). Whether the Commissioner's decision is supported by substantial evidence "is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 690 (9th Cir. 2009). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. §404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

### III. Analysis

Plaintiff raises five issues on appeal: whether the ALJ adequately explained her

step three decision, whether the ALJ adequately resolved conflicts between the VE testimony and the RFC, whether the ALJ erred in failing to give clear and convincing reasons to discount her subjective symptom testimony, whether the ALJ properly considered the medical evidence of record, and whether the ALJ failed to comply with the Appeals Council's remand order related to the evaluation of Plaintiff's obesity. (Doc. 21).

As an initial matter, the Court notes that neither Plaintiff's Opening Brief nor her Reply contain any legal citations to Ninth Circuit case law. (Docs. 21 and 27). Indeed, none of the case law cited in Plaintiff's briefs are binding on this Court. Nor are most of the cases cited from district courts across the country—District of New Jersey, District of Colorado, Southern District of Texas, Southern District of Ohio, Northern District of Illinois—within the Ninth Circuit. Some of these cases are not even relevant to this matter as they do not comply with the specific standards this Court must follow from the ample Ninth Circuit precedent in these matters. Moreover, Plaintiff requests that her case be remanded for an award of benefits but cites to no legal standards that must be met for the Court to do so. This has made the review of this matter more difficult. Nevertheless, the Court will consider each of Plaintiff's arguments in turn.

### A.    The ALJ Did Not Err at Step Three.

Plaintiff briefly argues that her low back pain meets the listing requirements of Listing 1.04, and therefore, the ALJ should have found her to be disabled at step three. (Doc. 13 at 2).

At step three of the sequential evaluation, a claimant can establish disability if she shows that her impairment meets or equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii). "Listed impairments are purposefully set a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013), quoting *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). The mere diagnosis of a listed impairment does not

establish that a claimant meets or equals a listed impairment. *See Young v. Sullivan*, 911 F.2d 180, 183-84 (9th Cir. 1990). Rather, "[f]or a claimant to show that his impairment matches a listing, it must meet <u>all</u> of the specified criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020), quoting *Zebley*, 493 U.S. at 530 (emphasis added). It is the claimant's burden to prove her impairment meets the criteria of a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

Plaintiff argues that the ALJ erred "in not fully explaining" her step three decision. (Doc. 21). Plaintiff further argues that she has conditions that "cause her an immense amount of pain that limits her mobility and ability to perform daily activities," and that she "clearly" meets Listing 1.04. (*Id.* at 11). However, this is not the standard at step three. As Ninth Circuit case law clearly establishes, the listed impairments are intentionally set at a very high level of severity, requiring a plaintiff to establish that they meet all of the specified criteria and that all criteria were present for at least twelve months. *See* § 416.920(a)(4)(iii).

Relevant to this matter, to be found disabled under Listing 1.04 (A), Plaintiff had the burden to establish that she had (1) motor loss with atrophy, muscle weakness, and sensory and reflex loss, (2) compromise of a nerve root, and (3) positive straight leg testing for both a period of at least 12 months and throughout her alleged period of disability. To be found disabled under Listing 1.04 (C), Plaintiff had the burden to establish that she had muscle weakness that caused the "inability to ambulate effectively." Here, throughout the decision, the ALJ discussed medical evidence that Plaintiff had a normal gait, exhibited normal motor strength and sensory function, experienced no significant cord compromise, and had motor strength of 5/5. (AR 18-26). This is substantial evidence to support the ALJ's step three determination. Plaintiff has not established that the ALJ erred at step three and the Court finds no error here.

**B.     The ALJ properly determined Plaintiff's RFC.**

Plaintiff next argues that the ALJ erred in determining that she had the RFC to

perform light work, arguing that the VE testimony on the matter directly conflicted with the RFC determination. (Doc. 21 at 12-14). The Commissioner argues that the ALJ's RFC determination was supported by substantial evidence.

"Residual functional capacity is an administrative finding reserved to the Commissioner." *Lynch Guzman v. Astrue*, 365 F. App'x 869, 870 (9th Cir. 2010); 20 C.F.R. § 404.1527(e)(2); *see also Vertigan v. Halter,* 260 F.3d 1044, 1049 (9th Cir. 2001) ("it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). In assessing a claimant's RFC, the ALJ considers and evaluates the medical opinions in the record, assigns a weight to each, and resolves any conflicts or ambiguities between them. 20 C.F.R. § 416.927(c); *Garrison*, 759 F.3d at 1010. An ALJ's RFC determination will be upheld if it was based on substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Biestek*, 139 S. Ct. at 1154.

Here, the crux of Plaintiff's argument is that the ALJ limited her to "occasionally reaching overhead bilaterally," and that the VE's testimony that she could perform work as a medical assistant directly conflicts with the ALJ's finding because a medical assistant has to reach overhead "frequently". (Doc. 21 at 12). The Court agrees that there is an inconsistency here, but the error is harmless. The VE also testified that there were 23,505 jobs as a correctional treatment specialist that exist in the national economy that Plaintiff could perform. This job does not require frequent reaching overhead, and Plaintiff does not take issue with the VE's findings that this position would be consistent with the RFC finding. Plaintiff has not established that the ALJ committed any harmful error here. *See Thomas v. Comm'r of Soc. Sec. Admin.*, 480 F. App'x 462, 464 (9th Cir. 2012) (holding that error with respect to two jobs VE identified conflicted with the RFC was harmless because the VE also identified a third job that plaintiff could perform).

Alternatively, Plaintiff argues that the VE's testimony was not based on

substantial evidence as there is no explanation of how the VE arrived at his decisions. Citing to a single case from the District of Massachusetts, Plaintiff argues that a reviewing court can reverse an ALJ's opinion and remand for an award of benefits where the VE does not base his testimony on substantial evidence in the record.  (Doc. 21 at 14). This Court is aware of no such requirement in this Circuit.  Rather, it is the ALJ's RFC determination that must be based on substantial evidence.  Moreover, Plaintiff stipulated to the VE's qualifications, as is common in these matters, and Plaintiff's counsel declined to cross-examine the VE as to the opinions.  (AR 79-80).

The Court finds that the ALJ's RFC determination was based on substantial evidence in the record in accordance with 20 C.F.R. § 1545(a)(1).  Therefore, the ALJ did not commit harmful error in her discussion of Plaintiff's RFC.

**C.    The ALJ provided specific, clear, and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony.**

Plaintiff briefly argues that the ALJ did not provide legitimate reasons to discount her testimony, and therefore, that the Court should remand this matter for an award of benefits.  (Doc. 21 at 15-16).  The Commissioner argues that the ALJ properly examined the medical evidence to determine that the record did not support Plaintiff's testimony as to the severity of her symptoms.  (Doc. 25 at 17-21).

An ALJ must evaluate whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal citations omitted)).  In evaluating a claimant's pain testimony after a claimant produces objective medical evidence of an underlying impairment, "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain."  *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).  However, the ALJ may "reject the claimant's testimony about the severity of [the] symptoms" provided that the ALJ also explains his decision "by providing specific, clear,

and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015). The ALJ may also consider "'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'" *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007)). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," *Id.* at 1113, or where they suggest that "later claims about the severity of [the] limitations were exaggerated," *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009).

Plaintiff testified that she was unable to perform any work due to her physical impairments, including severe back pain, hand pain and numbness, and tingling in her neck, shoulders, and hands. (AR 21). Plaintiff stated that she is unable to sit for more than 15-20 minutes at a time without shifting positions, and that she could walk 10-20 minutes before needing to sit. (*Id.*) Plaintiff testified that she requires use of a cane every day. Plaintiff argues that these impairments prevent her from performing any work.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms alleged, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not consistent with the medical evidence, including her own statements and testimony regarding activities of daily living. (*Id.*)

Plaintiff argues that the ALJ discounted her symptoms without providing a legal basis for doing so and using only "boilerplate language." (Doc. 21 at 15). Plaintiff's only specific argument here relates to the ALJ's reliance on two vacations that Plaintiff took after her alleged onset of disability date—one to San Diego and another to Mexico—to discount her testimony. Citing to cases both out of District and out of Circuit, Plaintiff argues that the ALJ improperly relied on these trips to discount her testimony. The Court does not agree.

As an initial matter, the Court notes that the ALJ's discussion relating to Plaintiff's

symptom testimony and medical records spans eight pages, which is more thorough than is often seen in these matters. (AR 18-26). As to Plaintiff's specific argument here, that the ALJ could not use her vacations to discount her testimony, numerous decisions from the Ninth Circuit hold otherwise. *See Romanelli v. Astrue*, 267 Fed. Appx. 722, 724 (9th Cir. 2008) ("ALJ reasonably concluded that Ms. Romanelli's claimed limitation of being unable to stand for more than fifteen minutes at a time was inconsistent with her testimony about her physical activities such as traveling around the United Kingdom for two weeks"); *Wennet v. Saul*, 777 Fed. Appx. 875, 877 (9th Cir. 2018) (discounting symptom testimony where claimant travelled to New York and Italy); *Sadeeq v. Colvin*, 607 Fed. Appx. 629, 631 (9th Cir. 2015) ("ALJ did not err by concluding that Sadeeq's trip to Mecca for a pilgrimage suggested that the alleged symptoms and limitations may have been overstated.").

The ALJ concluded that the Plaintiff's daily activities, including her vacations to San Diego and Mexico, did not support Plaintiff's claims of disabling limitations, and therefore, properly used this as a reason to find that her subjective symptom testimony was not persuasive. While Plaintiff may see this evidence in a different light, the Court cannot second-guess the findings of the ALJ when there is no error in the discussion of the symptom testimony. *See Thomas*, 278 F.3d at 954 ("[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."). The Court also notes that this was but a single reason of many that the ALJ used to discount Plaintiff's symptom testimony, and she has not challenged any of the other reasons. (AR 18-26). The ALJ set forth multiple specific reasons supported by substantial evidence for discounting some of Plaintiff's subjective symptom statements. The Court finds that the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony. *See Brown-Hunter*, 806 F.3d at 488–89.

**D.     The ALJ did not err in consideration of the medical evidence.**

Next, Plaintiff argues that the ALJ erred in considering the opinion of Plaintiff's

"primary care provider," Cathleen Jochim, N.P. (Doc. 21 at 18). What Plaintiff does not acknowledge is that Ms. Jochim is a nurse practitioner. While the Court recognizes that Plaintiff had a lengthy treatment relationship with Nurse Jochim, the regulations treat Nurse Practitioners as "other source" opinions, which was not an "acceptable" medical source at the time Plaintiff filed her Application. *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017). Thus, to reject the opinion of a nurse practitioner, the ALJ only needed to provide "germane" reasons for doing so. *Id.* at 906; *see also* 20 C.F.R. § 406.913(a) (defining acceptable medical sources as licensed physicians and psychologists), 416.913(d) (defining other sources as medical professionals not listed in subsection (a)); *Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015) (per curiam) (ALJ need only give germane reasons to reject an "other source" opinion). Thus, while merely stating that Jochim's status as an "unacceptable" medical source would not be a germane reason to reject her opinion, the ALJ cited multiple reasons to give this opinion little weight. *See Camilli v. Berryhill*, No. 18-CV-06322-JSC, 2019 WL 3412921, at *8 (N.D. Cal. July 29, 2019) (citing *Popa*, 872 F.3d at 907).

Nurse Jochim opined that Plaintiff's pain would constantly interfere with her attention and concentration and that she would be unable to perform any work. (AR 666-71). She opined that Plaintiff would need breaks every 15 minutes and could only stand up for five minutes at a time. (*Id.*) Plaintiff argues that the ALJ failed to consider all of the factors relevant to a treating physician.

Here, the ALJ afforded little weight to Nurse Jochim's opinion for a number of reasons. First, the ALJ noted that the opinion offered no explanation for the extreme limitations. Second, the ALJ stated that the opinion was not from an acceptable medical source pursuant to the Regulations. Third, the ALJ discussed that Plaintiff had a lumbar spine surgery after the date of Nurse Jochim's opinion and that Plaintiff showed improvement after that surgery that was not accounted for in Nurse Jochim's opinion. Fourth, the ALJ noted that Nurse Jochim is a general nurse practitioner and not a specialist in orthopedic conditions. Lastly, the ALJ found Nurse Jochim's opinion about

Plaintiff's ability to grasp, twist, or turn with her hands to be inconsistent with the findings of Dr. Ramachandran, which did not show any atrophy or inability to use the hands. (AR 903). In short, the ALJ gave multiple germane reasons to give little weight to this opinion.

Thus, the ALJ determined that Nurse Jochim's opinions were not supported by the record and she gave them minimal weight. In making this determination, the ALJ cited to medical evidence in the record that contradicted Nurse Jochim's opinion. (*Id.*) The Court finds that the ALJ provided germane reasons for giving little weight to this opinion. The ALJ did not err here.

**E.     The ALJ properly considered Plaintiff's obesity.**

Plaintiff also argues that while the ALJ found Plaintiff's obesity to be a severe impairment, she did not conduct an analysis of how Plaintiff's obesity factored into her RFC determination. (Doc. 21 at 8). The Commissioner argues that the ALJ properly considered this impairment. (Doc. 25 at 24-25).

Here, the ALJ stated at the outset of the opinion that she would "evaluate the claimant's obesity taking it into consideration in the postural and environmental limitations for the residual functional capacity." (AR 15). The ALJ then discussed obesity, correctly stating that there exists no medical listing for obesity, but that "the undersigned has considered the impairment of obesity using the criterial for the musculoskeletal, respiratory, and cardiovascular impairments . . . as required by SSR 02-1p." (*Id.* at 20). The ALJ explained that, while finding obesity to be a severe impairment, it did not meet the requirements of a listing impairment and that no treating or examining physician noted findings at the severity level required for a listing impairment. (*Id.*) Further, the ALJ cited to the medical records confirming Plaintiff's weight at various points during the relevant period and found obesity to be a severe impairment. (*Id.* at 23). The ALJ next calculated Plaintiff's BMI and found that her weight impacted Plaintiff's "ability to ambulate, as well as her other body systems." In the RFC, the ALJ limited Plaintiff to light work that did not require walking or standing

more than four hours or more than occasional bending.  (*Id.* at 20).  The ALJ stated that she considered Plaintiff's obesity in assessing the RCF, and all of the jobs the vocational expert identified were sedentary in nature.  (*Id.* at 23, 27).

The Court finds no error here.  Moreover, as there is no listing for obesity in the regulations, it is ultimately the Plaintiff's burden to provide evidence of functional limitations caused by obesity.  *See Schooley v. Colvin*, 2015 WL 1062029, at *15 (D. Ariz. Mar. 11, 2015); citing *Andrews v. Shalala*, 53 F.3d 1035, 1040 (9th Cir.1995) ("a claimant has the burden to provide evidence showing any functional limitations that the obesity caused.").  The ALJ did not err here.

## IV.   Conclusion

The Court finds that substantial evidence supports the ALJ's nondisability determination.  The ALJ properly considered the medical opinion testimony, properly arrived at her step three findings, discounted Plaintiff's symptom testimony by providing specific, clear, and convincing reasons supported by substantial evidence, and did not err in the RFC determination.  Therefore, the Court finds that the ALJ did not err in her decision, which is based on substantial evidence.  *See Orn*, 495 F.3d at 630.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the ALJ is **affirmed**.  The Clerk of Court is directed to enter judgment accordingly and dismiss this action.

Dated this 1st day of March, 2022.

Honorable Susan M. Brnovich
United States District Judge